BENJAMIN J. FOX (CA SBN 193374)
ANI OGANESIAN (CA SBN 329296)
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA  90017-3543
Telephone:  (213) 892-5200
Facsimile:  (213) 892-5454
bfox@mofo.com
aoganesian@mofo.com

JOYCE LIOU (CA SBN 277720)
EOIN CONNOLLY (CA SBN 300373)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522
jliou@mofo.com
econnolly@mofo.com

THOMAS C. FROST
(CA SBN 185187)
THE FROST FIRM
401 West A Street, Suite 1150
San Diego, CA 92101
Telephone:  (619) 822-1741
Facsimile:  (619) 822-1744
tfrost@thefrostfirm.com

Attorneys for Plaintiff/Counter-Defendant,
AK FUTURES LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AK FUTURES LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>LIMITLESS TRADING CO., LLC d/b/a CALI KULTURE, a California limited liability company; A1 WHOLESALE SUPPLY, LLC d/b/a CALI KULTURE, a Georgia limited liability company; ALEEM WADHWANIA, an individual; NURUDDIN WADHWANIA, an individual; and DOES 1-10,<br><br>    Defendants. | Case No. 8:21-cv-01154<br><br>(Related to 8:21-cv-1027-JVS-ADS, 8:21-cv-1028-JVS-ADS, and 8:21-cv-01061-JVS-ADS)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AK FUTURES' MOTION TO DISMISS COUNTERCLAIMS**<br><br>Complaint Filed: July 02, 2021<br><br>Hearing Date:    Oct. 4, 2021<br>Hearing Time:   1:30 p.m.<br>Ctrm:               10C<br><br>The Hon. James V. Selna |
| LIMITLESS TRADING CO., LLC d/b/a CALI KULTURE; and A1 WHOLESALE SUPPLY, LLC d/b/a CALI KULTURE<br><br>    Counter-claimants,<br><br>    v.<br><br>AK FUTURES LLC; and DOES 1-10<br><br>    Counter-defendants. | |

**TABLE OF CONTENTS**

|  |  |  | **Page** |
|---|---|---|---|
| INTRODUCTION | | | 1 |
| RELEVANT BACKGROUND AND PROCEDURAL HISTORY | | | 2 |
| | A. | AK Futures' Complaints | 2 |
| | B. | Cali Kulture's Counterclaims | 2 |
| ARGUMENT | | | 3 |
| I. | CALI KULTURE HAS NOT PROPERLY PLED A CLAIM FOR BREACH OF CONTRACT | | 3 |
| | A. | The Counterclaims Fail to Allege Facts Showing That Non-Party Pete Amato Had Authority to Bind AK Futures to a Contract | 3 |
| | B. | The Terms of the Alleged Contract Are Not Sufficiently Definite, Including Whether the "Contract" Is Written or Oral | 6 |
| II. | NO DEFAMATION CLAIM EXISTS HERE | | 7 |
| | A. | The Applicable Legal Framework | 7 |
| | B. | The Identified Online Comments Are Not Defamatory | 8 |
| | C. | Cali Kulture Alleges No Facts Showing Special Damage | 10 |
| III. | THE UCL CLAIM ALSO FAILS | | 11 |
| | A. | AK Futures' Alleged Acts Were Not Unlawful Under the UCL | 11 |
| | B. | The Alleged Acts Were Not Unfair Under the UCL Either | 12 |
| IV. | NO CLAIM FOR UNJUST ENRICHMENT EXISTS | | 13 |
| CONCLUSION | | | 14 |

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015)................................................................................13

*Avenmarg v. Humboldt Cnty.*,
   No. 19-cv-05891-RMI, 2020 WL 4464876
   (N.D. Cal. Aug. 4, 2020) ......................................................................................7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................3

*Bonneville Power Admin. v. Washington Pub. Power Supply Sys.*,
   956 F.2d 1497 (9th Cir. 1992)......................................................................13, 14

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999).......................................................................................11

*Chavez v. Whirlpool Corp.*,
   93 Cal. App. 4th 363 (2001)..............................................................................12

*Dillon v. NBCUniversal Media LLC*,
   No. CV 12-09728 SJO (AJWx),
   2013 WL 3581938 (C.D. Cal. June 18, 2013)...........................................4, 5, 11

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010)............................................................................12

*Edumoz, LLC v. Republic of Mozambique*,
   No. CV 13-02309 MMM (CWx), 2014 WL 12802921
   (C.D. Cal. July 21, 2014)..............................................................................3, 6

*Ferlauto v. Hamsher*,
   74 Cal. App. 4th 1394 (1999)............................................................................10

*Global Telemedia Int'l Inc. v. Doe 1*,
   132 F. Supp. 2d 1261 (C.D. Cal. 2001).......................................................8, 9, 10

*Habtemariam v. Vida Capital Grp., LLC*,
No. 2:16-cv-01189-MCE-GGH, 2017 WL 2930846
(E.D. Cal. July 10, 2017).................................................................................. 6

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017)........................................................... 12

*Krinsky v. Doe 6*,
159 Cal. App. 4th 1154 (2008)..................................................................... 9, 10

*Language Door v. MyAsia LLC*,
No. SACV 13-01220 JVS (RNBx), 2014 WL 12690753
(C.D. Cal. Jan. 6, 2014) ................................................................................... 6

*Makaeff v. Trump Univ., LLC*,
715 F.3d 254 (9th Cir. 2013) ............................................................................ 7

*Malch v. Dolan*,
No. EDCV 15-00517 DDP (KKx), 2016 WL 4925161
(C.D. Cal. Sept. 13, 2016) ................................................................................ 4

*Omega Envtl. v. Gilbarco, Inc.*,
127 F.3d 1157 (9th Cir. 1997)......................................................................... 13

*Penrose Hill, Ltd. v. Mabray*,
479 F. Supp. 3d 840 (N.D. Cal. 2020)...................................................... 7, 8, 10

*People's Choice Wireless, Inc. v. Verizon Wireless*,
131 Cal. App. 4th 656 (2005).......................................................................... 12

*Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*,
946 F. Supp. 2d 957 (N.D. Cal. 2013)............................................................. 10

*Press Rentals Inc. v. Genesis Fluid Sols. Ltd.*,
No. 5:11-CV-02579 EJD (HRL), 2012 WL 3791449
(N.D. Cal. Aug. 31, 2012) ................................................................................ 7

*Sowinski v. Wells Fargo Bank, N.A.*,
No. 11-6431-SC, 2013 WL 706825 (N.D. Cal. Feb. 26, 2013) .......................... 4

*Stokes v. CitiMortgage, Inc.*,
No. CV14-00278 BRO (SHx), 2014 WL 4359193
(C.D. Cal. Sept. 3, 2014) ................................................................................ 11

*Underwager v. Channel 9 Austl.*,
69 F.3d 361 (9th Cir. 1995) ...............................................................................8

*Vespa v. Singler-Ernster, Inc.*,
No. 16-cv-03723-RS, 2016 WL 6637710
(N.D. Cal. Nov. 8, 2016) ..................................................................................11

*WM Wholesale LLC v. Amato*,
No. 2021-0493 (Del. Ch. June 7, 2021) .............................................................4

*Zochlinski v. Regents of the Univ. of Cal.*,
No. 2:10-cv-1824-KJM-KJN PS, 2015 WL 6744654
(E.D. Cal. Nov. 4, 2015).....................................................................................10

**Statutes & Rules**

Fed. R. Civ. P. 9(g) ...................................................................................................10

Cal. Bus. & Prof. Code § 17200 ................................................................................2

Cal. Civ. Code § 1624.................................................................................................6

**INTRODUCTION**

AK Futures initiated this lawsuit to protect the integrity of its popular CAKE brand of Delta-8 products from counterfeiting and copyright infringement.  As AK Futures' operative complaint explains, defendant Cali Kulture is engaged in widespread distribution of counterfeit CAKE-branded products, including a product that AK Futures has never sold or authorized for sale and which any reasonable distributor would know to be inauthentic.

In response, Cali Kulture seeks to plead retaliatory counterclaims, relying on discussions with a non-party, Pete Amato — who has never been a member of or authorized to act for AK Futures — to allege claims for breach of contract and other state law theories.  The counterclaims fail to state a claim for relief.

As this motion explains, Cali Kulture has not properly pled a claim for breach of contract because it has not alleged facts showing that non-party Amato had authority to bind AK Futures to a contract, or that the terms of the alleged contract are sufficiently definite — including whether the parties reached agreement orally or in writing (i.e., by "text message").

The counterclaims fail to plead defamation because the statements allegedly attributed to AK Futures are not slanderous *per se*, are not false statements of provable fact, and are not alleged to have caused Cali Kulture special damage. Several of the statements referenced in the counterclaims are not on their face even attributed to AK Futures.

The claim for statutory unfair competition fails because Cali Kulture has not properly pled an "unlawful" or "unfair" act under the UCL.  And, the unjust enrichment claim fails because it is not a standalone claim for relief and no basis for unjust enrichment exists here.

For all the reasons discussed below, AK Futures' motion to dismiss the counterclaims should be granted.

1

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A.     AK Futures' Complaints

AK Futures filed its complaint on July 2, 2021, alleging that Cali Kulture marketed and sold an infringing "Lookah" device intended for cannabis use that replicates AK Futures' copyrighted drawing and CAKE mark—a product that AK Futures has never made, authorized for sale, or endorsed.  (Dkt. 1 ¶¶ 1-4, 25-28.) The complaint further alleged that Cali Kulture and persons working with it are manufacturing and distributing counterfeit CAKE-labeled Delta-8 products, which contain unknown ingredients and risk serious harm to consumers.  (*Id*. ¶¶ 29-36.)

Cali Kulture responded to the complaint, representing that it obtained its CAKE-labeled products from third-party Smoke Tokes.  (*See* Dkt. 18.)

In July 2021, AK Futures' investigators made purchases of counterfeit CAKE-branded vaping products from Cali Kulture's store in Tucker, Georgia. (Dkt. 22 ¶¶ 34-36.)  AK Futures also obtained evidence that Cali Kulture commissioned the assembly (i.e., the packaging) of counterfeit CAKE-labeled Delta-8 products, contrary to Cali's representations that it obtained the product in question solely from Smoke Tokes.  (*Id*. ¶¶ 38, 40-41.)  On September 3, 2021, AK Futures filed its First Amended Complaint specifying Cali Kulture's additional misconduct.

### B.     Cali Kulture's Counterclaims

Cali Kulture's answer to the original complaint attached counterclaims, to which this motion responds.  The first counterclaim, for breach of contract, is based on an alleged agreement made by Pete Amato, through "oral conversations and text messages" in April 2021, for an alleged exclusive distribution arrangement to sell a CAKE-branded product called "Cake XL."  (C'claim ¶ 24 [Dkt. 18 at 9].)  The counterclaims attach several exhibits but do not include any text messages.

The counterclaim for defamation is based on social media posts attached as Exhibits A-C to the counterclaims, discussed in detail in Section II below.

The counterclaim under California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, relies on and incorporates by reference the allegations of breach of contract and defamation, relying on the "unlawful" and "unfair" prongs of the statute. (C'claim ¶¶ 65-67.)

The final counterclaim, for unjust enrichment, alleges that Cali Kulture promoted and sold CAKE products to Cali's customers, promoted the CAKE brand at a trade show in Florida, and obtained PACT Act licenses so that it could sell CAKE-branded products, which allegedly benefitted AK Futures. (*Id.* ¶¶ 70-71.)

**ARGUMENT**

**I.    CALI KULTURE HAS NOT PROPERLY PLED A CLAIM FOR BREACH OF CONTRACT**

**A.    The Counterclaims Fail to Allege Facts Showing That Non-Party Pete Amato Had Authority to Bind AK Futures to a Contract**

Pursuant to Rule 8, a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Failure to allege facts that plausibly support the elements of the claim warrants dismissal. To plead the existence of a contract, Cali Kulture needed to allege: "(1) the parties' capacity to contract; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." *Edumoz, LLC v. Republic of Mozambique*, 2014 WL 12802921, at *31 (C.D. Cal. July 21, 2014) (quoting Cal. Civ. Code § 1550). "To allege adequately that parties entered into a contract, a plaintiff must plead that they mutually consented to enter into the agreement." *Id.* (citing *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270 (2001)).[1]

Here, Cali Kulture relies on "oral conversations and text messages" between its employees, Amal Khan and Aleem Wadhwania, and Pete Amato concerning a

---

[1] The well-known elements of a breach of contract claim are: "(1) the existence of a contract, (2) his performance of the contract, or a legally cognizable excuse for nonperformance, (3) defendant's breach, and (4) resulting damage." *Edumoz*, 2014 WL 12802921, at *31 (citing *inter alia Great American Ins. Co. v. MIVCO Packing Co., LLC*, 2009 WL 942390, at *3 (N.D. Cal. Apr. 6, 2009)).

3

"master distributor" arrangement.  (C'claim ¶¶ 17-24.)  Cali Kulture then alleges that Mr. Amato asked Cali Kulture to send $600,000 to a separate company, WM Wholesale LLC, purportedly as an "advance."  (*Id.* ¶¶ 24-25.)  Cali Kulture does not allege any direct communication with Mr. Clelland or others from AKF concerning formation of the alleged contract in April 2021.  (*See id.* ¶¶ 17-25.)

The counterclaims also reference a dispute and litigation between Messrs. Clelland, Davis, and Meng, on the one hand, and Mr. Amato on the other, concerning Amato's self-dealing and thefts *from WM Wholesale LLC*.  (C'claim ¶ 36, citing *WM Wholesale LLC v. Amato*, No. 2021-0493 (Del. Ch. June 7, 2021).)  But nowhere do the counterclaims allege facts to plausibly suggest that Mr. Amato was a member or authorized agent of AK Futures, or that Amato had actual or apparent authority to bind AK Futures.  The allegations of an agreement binding AK Futures are insufficient.  *See, e.g.*, *Dillon v. NBCUniversal Media LLC*, 2013 WL 3581938, at *11 (C.D. Cal. June 18, 2013) (formulaic allegations of authority to bind purported principal did not state a breach of contract claim against television studio); *Sowinski v. Wells Fargo Bank, N.A.*, 2013 WL 706825, at *5 (N.D. Cal. Feb. 26, 2013) (claim for breach of oral contract failed to satisfy Rule 8 where plaintiff did not plead whether the bank's purported agent "had the authority to make such a deal on behalf of Wells Fargo"); *accord Malch v. Dolan*, 2016 WL 4925161, at *3 (C.D. Cal. Sept. 13, 2016) (allegations that contract applied to successors-in-interest were insufficient to bind non-signatory).

In *Dillon v. NBCUniversal*, for example, defendants argued on a motion to dismiss that plaintiff had not adequately alleged that defendant Hurwitz had authority to act as NBC and Universal's agent and bind them to a contract.  2013 WL 3581938, at *11.  The complaint alleged that "Hurwitz had actual or apparent authority to act on behalf of NBC and/or Universal during [a meeting with plaintiff] and during [Hurwitz's] other interactions with [plaintiff] and Moss."  *Id.*  The court found these allegations insufficient — mere "threadbare recital of the elements of a

cause of action, supported by mere conclusory statements." *Id.* (citation omitted). The *Dillon* court explained:

> Notably, there are no factual allegations that NBC or Universal ever intentionally or negligently caused Hurwitz to believe that he was their agent. There is also no factual allegation that NBC or Universal ever acted to cause Plaintiff to believe that Hurwitz was their agent. The only factual allegation Plaintiff makes in support of his claim that Hurwitz had the authority to bind NBC and Universal is that Hurwitz discussed the Treatment "with an 'exec' or either NBC or Universal." Hurwitz's actions, however, are not relevant as to whether he had the authority to so bind NBC and Universal; rather, it is the actions of NBC and Universal that are the subject of inquiry. It appears from Plaintiff's allegations that he assumed, or "believed," that Hurwitz had the authority to act on behalf of NBC and Universal. This is not sufficient to find NBC and Universal liable.

2013 WL 3581938, at *11. The court dismissed the breach of contract claim against NBC and Universal without leave to amend. *Id.* at *12.

Here, the counterclaims are devoid of factual allegations that Mr. Amato had actual or apparent authority to bind AK Futures. The only allegation on the subject is a passing phrase that "Amal learned that Pete was a partner at AKF". (C'claim ¶ 18.) But LLC entities have members, not partners; the phrase quoted above does not show authority to bind AK Futures. *See, e.g.*, *Dillon*, 2013 WL 3581938, at *11 n.8 (article asserting that NBC was to "partner with an array of stellar producers such as … Hurwitz" did not mean that Hurwitz was "a 'partner' of NBC in the legal sense" or "an agent of NBC within the scope of this partnership").

To the extent the counterclaims suggest that AK Futures' principal, Mr. Clelland, somehow ratified Mr. Amato's alleged agreement with Cali Kulture, the theory is not properly pled. (*See, e.g.*, C'claim ¶ 27 [alleging that weeks after the alleged contract's formation, Mr. Clelland stated that money could be refunded or products obtained from a third-party company].) The statute of frauds bars such

5

a claim in any event.  Cal. Civ. Code § 1624(a)(2) (promise to assume the debt of another is unenforceable unless in writing); *see Edumoz*, 2014 WL 12802921, at *31-32 (granting motion to dismiss claim for breach of oral agreement that was analogous to guarantee agreement for failure to satisfy statute of frauds).

### B.    The Terms of the Alleged Contract Are Not Sufficiently Definite, Including Whether the "Contract" Is Written or Oral

The breach of contract claim suffers from the additional defect that its alleged terms are not sufficiently definite.  Where a claimant alleges that a contract is reflected in a writing but declines to attach the writing to the complaint, the party must provide more specificity by pleading the contract's "legal effect." *Habtemariam v. Vida Capital Grp., LLC*, 2017 WL 2930846, at *3 (E.D. Cal. July 10, 2017).[2]  And "when the parties contemplate that acceptance of a contract's terms would be signified in writing, no binding contract is created when the parties fail to sign the agreement."  *Language Door v. MyAsia LLC*, 2014 WL 12690753, at *3 (C.D. Cal. Jan. 6, 2014) (citation omitted).

Here, Cali Kulture alleges that a contract was formed by "oral conversations and text messages," but declines to quote or attach any text message or to say which terms were in writing and which oral.  (C'claim ¶ 24; *see also id.* ¶ 52.)  This is insufficient.  *See, e.g.*, *Language Door*, 2014 WL 12690753, at *3-4 (where complaint alleged "that the contract 'was in part oral, written and implied[,]'" the pleading failed to provide fair notice of the claim: "even under the liberal pleading requirements of Rule 8(a), [plaintiff] has failed to explain which contract terms were oral, which written, and which implied to the extent necessary to allege a plausible claim for relief."); *Press Rentals Inc. v. Genesis Fluid Sols. Ltd.*, 2012 WL 3791449, at *6 (N.D. Cal. Aug. 31, 2012) (allegations of breach of contract

---

[2] "To plead a contract's legal effect, a plaintiff must 'allege the substance of its terms,' which is more difficult than pleading the contract's precise language because it 'requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions.'"  *Id.* (quoting *Ramirez v. GMAC Mortg.*, 2010 WL 148167, at *2 (C.D. Cal. Jan. 12, 2010)).

with bank based on "a written and/or oral agreement" were insufficient to satisfy Rule 8).

The counterclaims also fail to state what the parties allegedly meant by a "master distributor" agreement or the scope of any alleged exclusivity (*i.e.*, whether for the order Cali Kulture allegedly placed for specific units of Cake XL product or for some other scope or duration).  (*See, e.g.*, C'claim ¶¶ 22-23, 52, 55.)

For these additional reasons, the retaliatory counterclaim based on an alleged "exclusive" contract should be dismissed.

## II.   NO DEFAMATION CLAIM EXISTS HERE

### A.   The Applicable Legal Framework

The counterclaims fail to plead facts plausibly supporting the elements of defamation: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage."  *Avenmarg v. Humboldt Cnty.*, 2020 WL 4464876, at \*12 (N.D. Cal. Aug. 4, 2020); *see also Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 264 (9th Cir. 2013).

Defamation claims "cannot challenge statements of opinion that do not 'contain a provably false factual connotation.'"  *Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 856 (N.D. Cal. 2020) (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990)).  Thus, on a motion to dismiss, the Court must ask "whether a reasonable factfinder could conclude that the contested statement 'implies an assertion of objective fact.'"  *Id.* at 856-57 (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 861-62 (9th Cir. 1999)).  The Ninth Circuit applies a three-part test for deciding, on the totality of the circumstances, whether a statement is one of fact or opinion:

> *First*, we look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work. *[Second]* we turn to the specific context and content of the

statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation. *Finally*, we inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false.

*Underwager v. Channel 9 Austl.*, 69 F.3d 361, 366 (9th Cir. 1995) (emphasis added).

In considering the totality of circumstances, the Court may consider the forum of the communication, such as "on a social media platform where . . . the context was such that the audience would expect persuasive argument rather than provable assertions of fact." *Penrose Hill*, 479 F. Supp. 3d at 857 (citing *Info. Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980)); *see also Global Telemedia Int'l Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001) (addressing comments on Internet bulletin board and granting motion to dismiss; where the website at issue is "full of hyperbole, invective, short-hand phrases, and language not generally found in fact-based documents, such as corporate press releases or SEC filings[,]" it limits the likelihood that reasonable reader would consider it a statement of fact).

### B.    The Identified Online Comments Are Not Defamatory

Applying this well-settled legal framework, the statements allegedly attributed to AK Futures do not support a defamation claim:

1.  "The companies listed below have a financial interest in spreading lies about CAKE and CAKE's owners and are not to be trusted.  They will never have authentic CAKE product ever again."  (C'claim Ex. A.)  As the counterclaims admit, Cali sells a range of "vape, smoke, and glass products" that compete with AK Futures' CAKE brand (C'claim ¶ 10); Cali says it "lost interest in promoting and selling Cake branded products" (*id.* ¶ 32) and thus *does* have a financial interest in spreading false information adverse to CAKE's owners.  And *see Global Telemedia*, 132 F. Supp. 2d at 1269 (Internet posts stating, among other derogatory

comments, that the plaintiff-company "lie[s]" and that its shareholders were "[s]crewed out of your money," were not actionable statements of provable fact).

AK Futures has demanded that Cali Kulture cease-and-desist from misuse of the CAKE marks and plans never to again sell CAKE product to Cali Kulture. (*See, e.g.*, Dkt. 1, Prayer.)  Thus, the implication that Cali Kulture will not be receiving authentic CAKE product again also is not provably false.  And the writer's opinion that Cali Kulture and other sellers "are not to be trusted" is similarly not actionable.  *Global Telemedia*, 132 F. Supp. 2d at 1268-70 (online posts that the company "lie[s]," is a "[s]inking [s]hip," and that "their real life product is so slow or non-exist[e]nt" were not actionable); *see also Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1177 (2008) (in the context of an online message board containing "vulgar and insulting" language, a statement that the plaintiff had a "fake medical degree" was intended as ridicule rather than as a statement of fact).

2.  Social media post from "Peter Joseph".  (C'claim, Ex. B.)  Nothing in Exhibit B or the factual allegations of the counterclaims plausibly shows that the online post allegedly by "Peter Joseph" was made by AK Futures:



**Peter Joseph**
9m · 🌐

Dead ass serious post:
Y'all really need your own ideas. Stop copying every damn thing we do it's absurd. You look dumb honestly and on top of that you can't get the recipes anyway so you just look uninspired and like the knock off company you are. Typical corny distro shit. If I hear it again I'm blasting your whole shit Cali Culture plus we already sued you for selling fake CAKE to begin with. Not scared of smoke with none of you honestly this is getting ridiculous.

👍 1

(C'claim, Ex. B.)

In any event, this online comment, inartfully written, contains the type of loose language that the courts in *Penrose Hill*, *Global Telemedia*, and *Krinsky*, recognized on the pleadings would not be received as a statement of provable fact.

*Penrose Hill*, 479 F. Supp. 3d at 857 (Twitter post stating that plaintiffs were "fakers" not actionable statement of provable fact); *Global Telemedia*, 132 F. Supp. 2d at 1267 ("the postings are full of hyperbole, invective, short-hand phrases and language not generally found in fact-based documents"); *Krinsky*, 159 Cal. App. 4th at 1177 ("fake medical degree"); *see also Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1398, 1404 (1999) (phrases "loser wannabe lawyer" and "frivolous lawsuit" did not reasonably imply facts about attorney's abuse of legal process).

3.  "Cake is suing Cali Kulture and Smoke Tokes for the damage they have done." (C'claim, Ex. C at 3.)  Finally, the only statement about Cali Kulture in Exhibit C to the counterclaims — that AK Future is suing Cali and Smoke Tokes for damages — is true.  *E.g.*, *Penrose Hill*, 479 F. Supp. 3d at 857-58.

**C.    Cali Kulture Alleges No Facts Showing Special Damage**

Even if *arguendo* the counterclaims alleged a defamatory statement (they do not), Cali Kulture has failed to allege facts showing special damage caused by the social media posts.  Its bare allegation that it suffered harm to its "business reputation" and brand (C'claim ¶ 63) is insufficient.  Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated"); *see also Zochlinski v. Regents of the Univ. of Cal.*, 2015 WL 6744654, at *4, *9 (E.D. Cal. Nov. 4, 2015) (granting motion to dismiss defamation claim where allegations of special damages were "generally conclusory in nature"; "'[the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations'" (alterations in original) (citation omitted)); *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*, 946 F. Supp. 2d 957, 981 (N.D. Cal. 2013) (commercial disparagement claim requiring allegations of "special damages" required pleading "particular customers and transactions of which it was deprived as a result of the libel" (citation omitted)), *aff'd by*, 609 F. App'x 497.

Accordingly, the defamation counterclaim fails and should be dismissed.

**III.    THE UCL CLAIM ALSO FAILS**

   **A.    AK Futures' Alleged Acts Were Not Unlawful Under the UCL**

The counterclaims do not allege facts that plausibly support a UCL claim under either the "unlawful" or "unfair" prongs of the statute.  (C'claim ¶¶ 65-68); *see Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

The UCL counterclaim relies primarily on Cali Kulture's allegations of breach of contract and defamation, which the claim incorporates by reference. (C'claim ¶ 65.)  Cali's breach-of-contract claim cannot support a UCL claim: "[A] breach of contract is not itself 'unlawful' conduct for purposes of California's UCL." *Dillon*, 2013 WL 3581938, at *8 (quoting *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F.Supp.2d 1094, 1110 (E.D. Cal. 2010)).  "This is so because if 'a simple breach of contract could form the basis for a [UCL] claim, then virtually every contract action could be converted into a business tort.'" *Id.* (quoting *Unique Functional Prods., Inc. v. JCA Corp.*, 2012 WL 367245, at *5 (S.D. Cal. Feb. 3, 2012)).  And, as explained above, Cali Kulture's breach-of-contract counterclaim fails to state a claim in any event.

The defamation claim fails for the reasons explained in Section II above and, thus, also cannot support a UCL claim.  *See, e.g.*, *Stokes v. CitiMortgage, Inc.*, 2014 WL 4359193, at *11 (C.D. Cal. Sept. 3, 2014) ("If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also fails." [citation omitted]).

Cali Kulture's further, single-sentence allegation — that "on information and belief" AK Futures used Cali to "introduce and distribute Cake branded products to all of Cali Kulture's customers" and then "cut Cali Kulture out and transact[ed] business directly with [those] buyers" — does not state an unlawful act.  (C'claim ¶ 66); *see also Vespa v. Singler-Ernster, Inc.*, 2016 WL 6637710, at *1 (N.D. Cal. Nov. 8, 2016) (pleading "on information and belief" creates "a further inference that [claimant] may lack knowledge of underlying facts to support the assertions, and is instead engaging in speculation to an undue degree").  This allegation merely

mirrors Cali's failed contract theory; it does not identify any separate "violation[] of other laws" made "independently actionable" by the UCL. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017).

### B. The Alleged Acts Were Not Unfair Under the UCL Either

For many of the same reasons Cali Kulture fails to state a claim under the "unlawful" prong of the UCL, it also fails under the "unfair" prong of the statute.

Where, as here, the claimant is an alleged competitor rather than a consumer, "a business practice is 'unfair' only if it 'threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 254 (2010) (quoting *Cel-Tech*, 20 Cal. 4th at 187) (refusal to sell mailing list to plaintiff not "unfair" under ULC).

The defective allegations of breach of contract and posting derogatory online comments allege harm to a single competitor, not harm to *competition* itself. *Id.*; *see also People's Choice Wireless, Inc. v. Verizon Wireless*, 131 Cal. App. 4th 656, 668-72 (2005) (Verizon's refusal to sell new phone models to independent retailers during holdback period not unfair under UCL); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) (manufacturer's refusal to sell to retailers who did not comply with minimum retail price policy not unfair under UCL).

As the counterclaims allege, Cali Kulture was free to buy products from other sellers; AK Futures' alleged refusal to deal with Cali Kulture does not threaten an antitrust violation or constitute an unfair business practice. "Absent a legal provision to the contrary, a private party generally may choose to do or not to do business with whomever it pleases." *Drum*, 182 Cal. App. 4th at 254. Moreover, the alleged "exclusive" distributorship deal that Cali Kulture sought would have limited, rather than enhanced, competition. (C'claim ¶¶ 24, 29); *accord Omega Envtl. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162-63 (9th Cir. 1997) (exclusive

12

distribution arrangements tend to limit rather than enhance competition).

Accordingly, Cali Kulture has not pled a viable UCL claim.

## IV. NO CLAIM FOR UNJUST ENRICHMENT EXISTS

The unjust enrichment counterclaim incorporates by reference Cali Kulture's failed allegations of a breach of contract and defamation and suffers defects similar to those discussed above. (C'claim ¶¶ 69-72.) Under California law, "there is not a standalone cause of action for 'unjust enrichment'." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (unjust enrichment describes the theory that "defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request'" [citation omitted]). "There is no unjust enrichment if one person voluntarily confers a benefit upon another." *Bonneville Power Admin. v. Washington Pub. Power Supply Sys.*, 956 F.2d 1497, 1505 (9th Cir. 1992).

Here, Cali Kulture has not pled facts showing that AK Future unjustly received a benefit at Cali Kulture's expense. The counterclaims allege that Cali Kulture sold CAKE products to its customers, promoted CAKE at a trade show, and obtained PACT Act distribution licenses to ship products (C'claim ¶¶ 19-21, 70) — months *before* the alleged agreement with Mr. Amato for an "exclusive" distribution arrangement (*id.* ¶ 24). Nothing in the pleading plausibly suggests that Cali Kulture took these steps for AK Futures' benefit, rather than its own. (*See, e.g.*, C'claim ¶ 19 ["From at least February 2021 to April 2021, . . . Cali Kulture purchased and sold hundreds of thousands of dollars worth of Cake branded Delta-8 vaping products"]; *id.* ¶ 21 [touting the "great success" Cali Kulture had selling Cake products].) The PACT Act distribution licenses that Cali Kulture says it obtained are not alleged to be licenses for AK Future, but instead,

13

for Cali Kulture.[3]  (*Id.* ¶ 23.)  If AK Futures benefited from Cali Kulture's marketing and sales, it did not do so unjustly.  *Bonneville Power*, 956 F.2d at 1505.

## CONCLUSION

The counterclaims alleged by Cali Kulture are entirely pretextual and do not state a viable claim for relief.  They should be dismissed without leave to amend.

Dated:    September 3, 2021                MORRISON & FOERSTER LLP

By:  */s/ Benjamin J. Fox*
Benjamin J. Fox

Attorneys for Plaintiff/
Counter-Defendant
AK FUTURES LLC

4550646

---

[3] Cali Kulture's allegation that it obtained PACT Act distribution licenses in 50 states only because of AK Futures is also on its face implausible, given the counterclaims' allegations that "[f]or nearly a decade," Cali Kulture has had a "nationwide presence" as a wholesale distributor for a range of "vape, smoke, and glass products."  (C'claim ¶¶ 10-11.)