UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-cv-01154-JVS (ADSx) | Date | October 6, 2021 |
| Title | AK Futures v. Limitless Trading Co., LLC | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Deborah Lewman | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                               Not Present

**Proceedings:     [IN CHAMBERS] Order Regarding Motion to Dismiss Counterclaims**

Plaintiff AK Futures LLC ("AK Futures") moves this court to dismiss the counterclaims brought against it by Defendants Limitless Trading Co., LLC d/b/a Cali Kulture and A1 Wholesale Supply, LLC d/b/a Cali Kulture (collectively, "Cali Kulture") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Mot., Dkt. No. 25.  Cali Kulture opposes the motion.  Opp'n, Dkt. No. 29.  AK Futures filed a reply in support of its motion.  Reply, Dkt. No. 32.

For the following reasons, the Court **GRANTS in part** and **DENIES in part** the motion.

## I. Background

Cali Kulture's Answer and Counterclaims allege the following.  "Counterclaim," Dkt. No. 18.  Cali Kulture is "a wholesale distributor and premier source of vape, smoke, and glass products."  Id. ¶ 10.  AK Futures was founded in October 2020 by James Clelland, Peter Amato, Devon Davis, and Jeffrey Meng.  Id. ¶ 15.  Before AK Futures was formed, Cali Kulture's Manager and Director of Purchasing Amal Khan knew Amato when he was working for a different company.  Id. ¶ 17.  When Khan learned that Amato was a partner at AK Futures, she reached out to him about purchasing AK Futures's "Cake" branded Delta-8 vaping products on behalf of Cali Kulture.  Id. ¶ 18.  "From at least February 2021 to April 2021, . . . Cali Kulture purchased and sold hundreds of thousands of dollars worth of Cake branded Delta-8 vaping products, at the direction and authorization of [AK Futures] and its representatives."  Id. ¶ 19.  During that two-month period, Cali Kulture made substantial efforts to expand the distribution fo Cake branded products.  Id. ¶ 20.  For example, Cali Kulture designed a Cake booth for a trade show "with the approval of [Amato]."  Id.  Cali Kulture spent approximately $20,000 for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-cv-01154-JVS (ADSx) | Date | October 6, 2021 |
| Title | AK Futures v. Limitless Trading Co., LLC | | |

booth and related expenses to promote the Cake brand.  Id.  Over the next few months, Cali Kulture's labor and prior business connections resulted in it distributing Cake branded products with great success.  Id. ¶ 21.

In early 2021, Amato, one of the four founders of AK Futures, offered Cali Kulture a master distribution for its Cake branded products.  Id. ¶ 22.  In preparation for becoming the master distributor of Cake branded products, Cali Kulture took various actions to comply with government regulations, including hiring an outside firm to assist in preparing and filing documents to seek distribution licenses in all 50 states.  Id. ¶ 23. In or around April 2021, Amato asked Cali Kulture for an advance of money so he and his colleagues at AK Future could create a new product called "Cake XL."  "Based on oral conversations and text messages" between Amato, Khan, and Cali Kulture's CEO, Aleem Wadhwania, AK Futures and Cali Kulture came to an agreement with the following terms: (1) Cali Kulture would be the exclusive distributor of the new Cake XL product; (2) Cali Kulture would pay AK Futures $1,200,000 with a payment plan of $600,000 as a down payment and the remaining $600,000 payable when shipment of the new product was ready; (3) AK Futures would send Cali Kulture 100,000 pieces of the new product at $12 per piece; and (4) AK Futures represented that the shipment of new product would be ready in about 30 days' time.  Id. ¶ 24.

On April 19, 2021, Amato sent Wadhwania of Cali Culture a text message with payment information for the entity affiliated with AK Futures to whom AK Futures wanted the funds sent.  Id. ¶ 25.  In mid-April, Cali Kulture paid AK Futures $600,000 in furtherance of their agreement.  Id. ¶ 25.  On May 10, 2021, Khan reached out to James Clelland, another AK Futures founder, saying that Cali Kulture had paid the $600,000 but had not yet received any product.  Id. ¶ 26.  The following day, Clelland responded via text message acknowledging receipt of the payment and explaining that it was taking time to keep up with demand.  Id. ¶ 27.  Clelland also conveyed that AK Futures was no longer shipping products from its warehouse and that products were being shipped through a third-party company called Smoke Tokes LLC ("Smoke Tokes").  Id.  Clelland told Cali Kulture that it could either refund the $600,000 or that that payment could go towards procuring the products from Smoke Tokes at $15 per piece.  Id.  Cali Kulture chose the second option and that same day, Khan informed Clelland that, per his direction, Cali Kulture was procuring the products from Smoke Tokes.  Id.  At approximately the same time, Wadhwania followed up with AK Futures regarding their agreement.  Id. ¶ 28.  Amato responded informing Wadhwania that his partner Clelland

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-cv-01154-JVS (ADSx) | Date | October 6, 2021 |
| Title | AK Futures v. Limitless Trading Co., LLC | | |

had decided not to honor the agreement and that Clelland had instead given the entire deal to Smoke Tokes.  Id.

Ultimately, in order to fulfill its obligations to retailers, Cali Kulture bought Cake branded products from Smoke Tokes but was forced to do so at Smoke Tokes's desired price because it was the master distributor of the products.  Id. ¶ 29.  Cali Kulture spent approximately $675,000 on Cake branded products from Smoke Tokes using the $600,000 it had already paid to AK Futures and an additional approximately $75,000 paid directly to Smoke Tokes.  Id. ¶ 30.  Per Amato and Clelland's instructions, Cali Kulture purchased various Cake Branded products through Smoke Tokes.  Id. ¶ 31.  Cali Kulture ultimately lost interest in promoting and selling Cake branded products for a number of reasons.  Id. ¶ 32.  For instance, after Smoke Tokes took over the distribution, it began selling the products at about the same prices as Cali Kulture, resulting in Cali Kulture losing distribution sales.  Id. ¶ 32.  Further, Cali Kulture's decision to no longer focus on the Cake Brand was also based on AK Future's conduct in not honoring its agreement regarding the Cake XL product.  Id. ¶ 33.

Amato left AK Futures in mid-2021.  Id. ¶ 34.  On June 9, 2021, the remaining AK Futures partners filed a lawsuit against Amato, claiming wide-ranging misconduct.  Id. ¶ 36.  AK Futures then filed lawsuits against Green Buddha LLC, Boyd Street Distro LLC, and Smoke Tokes alleging, among other things, that they had sold counterfeit Cake branded products.  Id. ¶¶ 37–39.

On July 2, 2021, AK Futures filed the instant lawsuit against Cali Kulture, alleging, among other things, that it sold counterfeit Cake branded products.  Id. ¶ 40.  Since filing the lawsuit, AK Futures and its representatives have posted statements on various social media platforms critical of Cali Kulture.  Id. ¶ 43.

Cali Kulture brings three counterclaims against AK Futures:  (1) breach of contract; (2) defamation; and (3) violation of California's Unfair Competition Law.

## II.  Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  A plaintiff must state "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-cv-01154-JVS (ADSx) | Date | October 6, 2021 |
| Title | AK Futures v. Limitless Trading Co., LLC | | |

(2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

Because factual challenges have no bearing under Rule 12(b)(6), generally, the Court may not consider material beyond the pleadings in ruling on a motion to dismiss. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), overruled on other grounds, Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002). There are, however, three exceptions to this rule that do not demand converting the motion to dismiss into one for summary judgment. Lee, 250 F.3d at 688. First, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record, but it "cannot take judicial notice of disputed facts contained in such public records." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018), cert. denied sub nom. Hagan v. Khoja, 139 S. Ct. 2615, 204 L. Ed. 2d 264 (2019) (citing Lee, 250 F.3d at 689); see Fed. R. Evid. 201(b). Second, the Court also may take judicial notice of documents attached to or "properly submitted as part of the complaint." Lee, 250 F.3d at 688. Third, if the documents are "not physically attached to the complaint," they may still be considered if the documents' "authenticity . . . is not contested" and the documents are necessarily relied upon by the complaint. Id.; United States v. Corinthian Colleges, 655 F.3d 984, 998–99 (9th Cir. 2011). "However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint" and cannot be incorporated by reference. Khoja, 899 F.3d at 1002.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 21-cv-01154-JVS (ADSx)     Date  October 6, 2021

Title  AK Futures v. Limitless Trading Co., LLC

### III. Discussion

#### A.  Breach of Contract

Cali Kulture alleges that AK Futures breached their agreement by not providing Cali Kulture with the "Cake XL" vaping product or making Cali Kulture the exclusive distributor of the product. Countercl. ¶ 55. AK Futures moves to dismiss the breach of contract claim for two reasons: (1) Cali Kulture does not adequately allege that Amato had authority to bind AK Futures; and (2) the terms fo the alleged contract are not sufficiently definite. Mot., Dkt. No. 25-1, at 3–7.

AK Futures argues that Cali Kulture fails to plead a claim for breach of contract because it "does not allege facts to plausibly suggest that [Amato] was a member or authorized agent of AK Futures, or that Amato had actual or apparent authority to bind AK Futures." Mot., Dkt. No. 25-1, at 4. Thus, AK Futures argues, Cali Kulture's "allegations of an agreement binding AK Futures are insufficient." Id. The Court agrees that Cali Kulture does not allege facts that, if true, plausibly show that Amato had actual or ostensible authority to bind AK Futures.

To plead the existence of a contract, Cali Kulture must allege: "(1) the parties' capacity to contract; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." Edumoz, LLC v. Republic of Mozambique, 2014 WL 12802921, at *31 (C.D. Cal. July 21, 2014) (quoting Cal. Civ. Code § 1550). Cali Kulture alleges that it formed a contract through "oral conversations and text messages" with Peter Amato. Countercl. ¶¶ 17–24. But, it does not allege facts sufficient to show that Amato had the authority to bind AK Futures.

In California, an agent can have actual authority or ostensible authority to bind a principal. Actual authority "is such as a principal intentionally confers upon an agent or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." Cal. Civ. Code § 2316. Ostensible authority "is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." Cal. Civ. Code § 2317. Cali Kulture argues that its counterclaims "allege numerous facts showing that [Amato] had both actual and ostensible authority to bind [AK Futures.]" Opp'n, Dkt. 29, at 6. It is true that the Counterclaims allege that Amato was one of the four original partners who founded AK Futures. See Countercl. ¶ 15. However, that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-cv-01154-JVS (ADSx) | Date | October 6, 2021 |
| Title | AK Futures v. Limitless Trading Co., LLC | | |

Amato co-founded AK Futures does not even mean he was involved with the company, let alone that he had the authority to bind AK Futures, when the parties allegedly formed their agreement.  Further, Cali Kulture argues in its opposition that Amato "held himself out to be a business partner in [AK Futures] and [Clelland] did nothing to dispel that impression." Opp'n, Dkt. 29, at 6.  But the Counterclaim does not allege facts to support that argument.  The Counterclaim only alleges that Khan "learned that [Amato] was a partner at [AK Futures]."  It does not allege that Amato did anything to make Khan believe he was a partner in the company or that Clelland did nothing to dispel her belief.  Cali Kulture's opposition brief also argues that "Cali Kulture and [AK Futures] had previously entered into several transactions whereby Cali Kulture purchased hundreds of thousands of dollars worth of Cake branded products, 'at the direction and authorization of [AK Futures] and its representatives,' *including Pete [Amato]*."  Id. at 6 (quoting Countercl. ¶¶ 18–19) (emphasis in original).  While the Counterclaim does allege the first part of this statement—that Cali Kulture purchased products at the direction and authorization of AK Futures and its representatives—it does not allege that those representatives included Amato.  The only allegation that the Counterclaim makes with regards to Amato giving approval on behalf of AK Futures is that Amato gave Cali Kulture approval to design a "Cake Booth" for a trade show in Florida.  Countercl. ¶ 20.  That Amato was a co-founder of AK Futures and that he gave Cali Kulture approval to design a trade show booth are insufficient to plausibly show that Amato had actual or ostensible authority to bind AK Futures.

Accordingly, the Court GRANTS AK Futures's motion to dismiss the breach of contract claim without prejudice and GRANTS Cali Kulture leave to amend and replead its claim.

**B.     Defamation**

Cali Kulture's second counterclaim against AK Futures is for defamation.  Counterclaims, Dkt. No. 18, ¶¶ 58–63.  To state a claim for defamation, Cali Kulture must allege that AK Futures (1) published a (2) statement of fact (3) that is false (4) unprivileged, and (5) has a natural tendency to injure (libel per se) or causes special damages.  Smith v. Maldonado, 72 Cal. App. 4th 637, 645–46 (1999).  "An essential element of defamation is that the publication in question must contain a false statement of *fact*."  Gill v. Hughes, 227 Cal. App. 3d 1299, 1309 (1991) (internal citation omitted) (emphasis in original).  Opinions and conclusions are not actionable unless they can

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-cv-01154-JVS (ADSx) | Date | October 6, 2021 |
| Title | AK Futures v. Limitless Trading Co., LLC | | |

reasonably be understood as declaring or implying facts capable of being proven true or false. See Integrated Healthcare Holdings v. Fitzgibbons, 140 Cal. App. 4th 515, 526–37 (2006).

Cali Kulture's opposition brief argues that the statements its Counterclaim identifies are "non-exhaustive examples" of defamatory statements. However, "although a plaintiff need not plead the allegedly defamatory statement verbatim, the allegedly defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement." Jacobson v. Schwarzenegger, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004). Cali Kulture cannot rest its claims on unidentified statements that are allegedly defamatory. Thus, the Court limits its inquiry to those statements that Cali Kulture's Counterclaim identifies.

AK Futures argues that Cali Kulture's defamation claim should be dismissed because the social media posts on which it relies are not defamatory statements of provable fact. See Reply, Dkt. 32, at 5. However, the Court finds that a reasonable fact finder could conclude that at least some of the statements identified in the Counterclaims imply an assertion of objective fact, rather than non-actionable opinion, that has a natural tendency to injure Cali Kulture's reputation. For example, the Counterclaim identifies an Instagram post in which AK Futures, via its Cake brand profile, wrote that Cali Kulture and Smoke Totes were "ABUSING [AK Futures's] PRODUCTS and SELLING FAKES." Countercl., Ex. C, at 2. A reasonable fact finder could conclude that this statement was an assertion of fact—specifically, that Cali Kulture sold fake products. Therefore, the Counterclaims provide sufficient factual allegations to support a plausible defamation claim.

AK Futures argues that "[e]ven if *arguendo* the counterclaims alleged a defamatory statement . . ., Cali Kulture has failed to allege facts showing special damage caused by the social media posts." Mot., Dkt. No. 25-1, at 10. Cali Kulture asserts that all of the statements are "defamatory *per se*," so they are not required to allege special damage. Opp'n, Dkt. No. 29, at 12. Common law defamation is "an oddity of tort law," because it allows for recovery for certain statements that are presumed to cause damage. Gertz v. Robert Welch, Inc., 418 U.S. 323, 349 (1974). "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as inducement, innuendo, or extrinsic fact, is said to be libel on its face." Cal. Civ. Code § 45a. "But if [a] reader would be able to recognize a defamatory meaning only by virtue of his or her own

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-cv-01154-JVS (ADSx) | Date | October 6, 2021 |
| Title | AK Futures v. Limitless Trading Co., LLC | | |

knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally attributable to all reasonable persons, then . . . the libel cannot be liberl per se but will be libel per quod." Bartholomew v. YouTube, LLC, 17 Cal. App. 5th 1217, 1226–27 (2017) (internal quotation marks omitted). Here, AK Futures is accusing Cali Kulture of selling fake products. No extrinsic information is required to understand that meaning. Accusations that a company is selling fake products, an act of dishonesty, has a natural tendency to injure its business reputation. See Global Truss America LLC v. GLP German Light Prods., 2011 WL 13220296, *15 (C.D. Cal. Dec. 1, 2011) (finding that statements asserting that a company was "guilty of an act of dishonesty, infringing on Plaintiff's trademark" was libel per se). Thus, Cali Kulture has adequately pleaded facts to allege libel per se.

Accordingly, the Court DENIES AK Futures's motion to dismiss Cali Kulture's claim for defamation.

**C.     California Unfair Competition Law**

California's Unfair Competition Law (UCL) prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The "unlawful" prong of the UCL treats violations of other federal, state, regulatory, or court-made law as unlawful business practices independently actionable under state law. Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc., 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003) (citation omitted). An unfair business practice under the UCL is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008). Finally, a business act is fraudulent within the meaning of § 17200 if "members of the public are likely to be deceived." Comm. on Children's Television v. Gen. Foods Corp., 35 Cal. 4th 197, 211 (1983). Claims brought under the fraudulent prong under the UCL or sounding in fraud must satisfy Rule 9(b). Faulk v. Sears, Roebuck & Co., No. C 11-2159, 2011 WL 5521177, at *5 (N.D. Cal. Nov. 14, 2011); Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that where plaintiff alleges unified course of fraudulent conduct and relies entirely on that conduct as the basis of the claim, the claim is grounded in fraud and must satisfy Rule 9(b)).

Cali Kulture alleges that AK Futures violated the "unlawful" probg of the UCL by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 21-cv-01154-JVS (ADSx)          Date  October 6, 2021

Title  AK Futures v. Limitless Trading Co., LLC

committing defamation. Defamation can be the basis of a UCL claim. See Sidense Corp. v. Kilopass Tech. Inc., 2012 WL 3545289, at *12 (N.D. Cal. Aug. 16, 2012) (explaining that a defamation claim may for the basis of a UCL claim). Because the defamation claim survives this motion, Cali Kulture's UCL claim also prevails.

For these reasons, the Court DENIES AK Futures's motion to dismiss Cali Kulture's Unfair Competition Law claim.

**D.     Unjust Enrichment**

There is no cause of action for unjust enrichment in California. Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (2003). "Unjust enrichment" describes an effect, not a theory of recovery. Id. "Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself." Id. (internal quotations omitted). As a result, there is "no cause of action in California for unjust enrichment." Id.; accord Doe v. Mindgeek USA Inc., 2021 WL 4167054, at *11 (C.D. Cal. Sept. 3, 2021) ("Like many other courts in this district, this Court believes that unjust enrichment is not a separate cause of action in California."); Rodriguez v. Just Brands USA, Inc., 2021 WL 1985031, at *7 (C.D. Cal. May 18, 2021); Iezza v. Saxon Mortg. Serv., Inc., 2010 WL 3934041, at *2 (C.D. Cal. Sept. 28, 2010) ("Under California law, a claim for unjust enrichment cannot stand alone as an independent claim for relief."). Thus, Cali Kulture's unjust enrichment claim does not constitute a proper cause of action and amendment would be futile.

Accordingly, the Court GRANTS AK Futures's motion to dismiss Cali Kulture's standalone unjust enrichment claim with prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 21-cv-01154-JVS (ADSx) | Date | October 6, 2021 |
| Title | AK Futures v. Limitless Trading Co., LLC | | |

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the motion.

**IT IS SO ORDERED.**

| | : | 0 |
|---|---|---|
| Initials of Preparer | djl | |